(Decided 18th March, 1890.)

THE MAYOR AND CITY COUNCIL OF BALTIMORE, and others *vs.* H. IRVINE KEYSER, and others.

*Municipal Corporation—Ordinance—Award of Contract—*
*Injunction—Equity pleading.*

By an ordinance of the Mayor and City Council of Baltimore passed on the 29th of May, 1889, the Mayor, Comptroller, and General Superintendent of Lamps were authorized to contract for lighting certain streets and public buildings with electric lights. They were directed to advertise in three daily newspapers for proposals for such lighting, the proposals to be opened and the contract to be awarded in the presence of the bidder or bidders, to the lowest responsible bidder, at 12 o'clock noon, on the 1st of June, 1889. Bidders were notified by public advertisement in three daily papers to file their proposals at the office of the General Superintendent of Lamps until 12 o'clock, noon, 1st of June. A sealed proposal was received at the office of the Superintendent of Lamps before the time designated; and a proposal, properly sealed and endorsed, was filed with the

Mayor, &c. of Baltimore, *et al. vs.* Keyser, *et al.*

Mayor at his office, by the Brush Electric Company. The Mayor and Comptroller at six minutes past 12 o'clock, noon, on the day appointed, in the absence of the Superintendent of Lamps, in the office of the Mayor, opened the proposal filed by the Brush Electric Company and awarded the contract to it. At ten minutes past 12 o'clock, the Superintendent appeared and presented the proposal which had been filed with him, but the others refused to open and consider it. HELD:

That the award was illegal and void, being in violation of the terms and conditions of the ordinance, and the city should be enjoined from making the contract, and from paying any money on account thereof

The award of the contract for electric lighting having been made without reference to the terms and conditions of the ordinance, and therefore unauthorized, a bill to restrain the execution of the contract, need not allege that the proposal which was not opened was a lower bid than the one accepted.

And the right to an injunction not being founded on the unopened proposal, it was not necessary to file it as an exhibit with the bill.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from an order of the Court below (DENNIS, J.,) granting an injunction restraining the Mayor, Comptroller, and General Superintendent of Lamps, &c. from contracting in the name of the Mayor and City Council of Baltimore, with the Brush Electric Light Company of Baltimore City, or with any other person or corporation, for the lighting with electric arc lights, in whole or in part, the streets, lanes, alleys, parks and public buildings, and other public places where electric lights were, at the time of the passage of the order, used by the City of Baltimore, for the year commencing July 1st, 1889, and ending June 30th, 1890, until said city officials shall have complied with the city ordinance mentioned in the order; and also enjoining the payment of any money by the city as compensation for lighting with electric lights, the streets, parks and

public buildings, where electric lights were then used, during the year above mentioned, under any contract purporting to have been made under said ordinance. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, FOWLER, and MCSHERRY, J.

*Bernard Carter, City Solicitor,* for the appellant, the Mayor and City Council of Baltimore.

*R. Stockett Mathews,* for the appellant, the Brush Electric Company of Baltimore City.

*Robert D. Morrison,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is a bill to restrain the defendant *officials* from entering into a contract for lighting certain streets and public buildings in Baltimore City, with electric lights; and to restrain the city authorities from paying any money under said contract.    It is filed by tax-payers of the city in their own behalf, and in behalf of all other tax-payers who may see fit to come in as parties.    The injunction is asked on the ground that the defendants have no lawful power to make the contract in question, and that the contract, if made, will impose upon the complainants an increased burden of taxation.    Now, if this be so,—if the contract is one which the defendants have no authority to make, and the contract, if made, will increase the burden of taxation,—then the injunction was properly granted.    Since the decision in *Mayor and City Council of Baltimore vs. Gill, et al.,* 31 *Md.,* 395, this can no longer be considered an open question.    Whilst freely recognizing the general principle, that public wrongs are not to be redressed at the suit of individuals who have

no other interest in the matter, than the rest of the public, the Court in that case held, that where the City authorities undertake to make a contract without the lawful power to make it, and the contract, if made, will increase the burden of taxation, tax-payers constitute a special class, having a special interest in the subject-matter distinct from that of the general public. In all such cases an injunction is, upon obvious principles, the most convenient and appropriate remedy. And in the still later case of *St. Mary's Industrial School for Boys vs. Brown, et al.,* 45 *Md.,* 310, 326, an injunction was held to be the proper remedy, whenever it appears that municipal corporations and their officers are "acting *ultra vires,* or are assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, and where such unauthorized acts may affect injuriously the rights and property of the parties complaining."

The authority of these cases is in no manner weakened, nor is the principle upon which they were decided in any manner questioned, in the subsequent cases of *Mayor, &c. of Baltimore vs. Weatherby,* 52 *Md.,* 442, and *Kelly, Piet & Co. vs. Mayor, &c. of Baltimore,* 53 *Md.,* 134. There was no ordinance in *Weatherby's Case,* say the Court, "requiring the Board of School Commissioners to advertise for sealed proposals for furnishing supplies or heating apparatus for school houses." The subject-matter was one entirely within the power and control of the Mayor and City Council, and there was no ground, therefore, for the interference of a Court of equity.

And in *Kelly, Piet & Co.,* the whole controversy in the opinion of the Court was one "between rival tradesmen for the custom of the Mayor and City Council, in supplying the departments with stationery and printed matter," in regard to which the public had no concern.

The real question then, in this case, is whether the defendants had the power to award the contract for lighting certain streets and public buildings to the Brush Electric Company; this being the contract out of which this controversy has arisen. And this depends upon the construction of the ordinance of the Mayor and City Council passed the 29th of May, under which the authority of the defendants to make the contract is derived, and by which the terms and conditions on which the authority is to be exercised, are plainly prescribed.

By section 1 of this ordinance, the defendants were authorized to contract with the lowest responsible bidder for lighting certain streets and public buildings with electric lights.

Section 2 provides they shall advertise in the daily newspapers for proposals, and that the proposals filed shall be opened, and the contract shall be awarded to the lowest responsible bidder at 12 o'clock, June 1st.

Section 3 requires that each proposal shall be accompanied by a cash deposit or certified check of $5000.

This is the ordinance under which the authority of the *Mayor and the Comptroller and the Superintendent of Lamps* to make the contract in question is derived, and these are the terms and conditions by which the exercise of this authority is to be governed. Now, it can hardly be necessary to say that, where a special power is thus conferred upon officers of a municipal corporation to make a contract, and the terms and conditions upon which the authority is to be exercised are prescribed, there must be at least a substantial compliance with such terms and conditions, or the contract will be invalid.

Now, in authorizing the defendants to make a contract for lighting certain streets and public buildings, the ordinance required in the first place, that they should advertise for proposals; and then it required that they

should open the proposals filed under the advertisement; and then it required that they should award the contract to the lowest responsible bidder. The object, the plain object, of these provisions, was to prevent *favoritism* in awarding the contract, and to secure to the people of Baltimore City the advantages and benefits to be derived from competitive bidding. The terms and conditions thus prescribed by the ordinance are *conditions precedent,* the compliance with which by the defendants, was obviously essential to the exercise of the power conferred. So the question, after all, comes to this: Was the contract in question made in the mode and manner, and upon the conditions prescribed by the ordinance? And as this is an application for a preliminary injunction, the question is one to be determined upon the bill and answer. What, then, are the averments in the bill on which the equity of the complainants rest? After setting out the ordinance, they allege that advertisements for proposals, signed by the Superintendent of Lamps, were published in three daily newspapers, the said proposals to be filed at his office up to 12 o'clock noon, June 1st, and they further allege and charge, that they are informed and believe, and do aver, that a certain sealed proposal or proposals were filed at the office of the Superintendent of Lamps before 12 o'clock noon, June 1st, accompanied by a duly certified check for $5000, and that the said Superintendent appeared at the Mayor's Office at six minutes past 12 o'clock, June 1st, and presented said proposal or proposals to the Mayor and Comptroller, and that they refused to open and consider the same. That the Mayor and Comptroller at 12 o'clock, June 1st, without waiting for the Superintendent of Lamps, or the production of any proposals filed with him, or making any inquiry as to whether any proposals had in fact been filed at his office, proceeded to open a proposal filed by the Brush Electric

Company with the Mayor, and not filed with the Super-
intendent of Lamps as required by the advertisement,
and to award the contract for electric lighting to said
company.

For reasons which do not appear, the Mayor and Comp-
troller and Superintendent of Lamps, have not deemed
it necessary to answer the bill; and the only answer
filed, is one filed by the Brush Electric Company.  After
denying the power of the defendant officials to desig-
nate the office of the Superintendent of Lamps as the
only place to file proposals under the ordinance, this
company says, it filed with the Mayor sealed proposals
for electric lighting, in conformity with the require-
ments of the ordinance, and that some time before the
hour of 12 o'clock noon, June 1st, the Mayor sent for
the Comptroller and for the Superintendent of Lamps;·
that the Comptroller thereupon appeared, and that at
*six minutes past* 12 *o'clock,* the Mayor took from his desk
the proposal filed by the defendant company, saying,
"the time had arrived for the consideration of bids for
electric lighting," and after referring to the absence of
the Superintendent of Lamps, and making some in-
quiries whether any other bids had been filed, he opened
said proposal, and having read it, handed it to the Comp-
toller; and "without haste or hurry of any kind," the
Mayor said, "As there appears to be but one bid, there
is nothing for us to do, but to award the contract to the
Brush Company;" and thereupon, at the suggestion of
one of the representatives of the company, standing by,
the Mayor, with the assent of the Comptroller, announced
that the contract was awarded to the Brush Company.
Just at this time, Mr. King, the Superintendent of
Lamps, entered the room with an envelope in his hand,
which was endorsed "Proposal for Electric Lighting,"
and addressed to the Mayor, Comptroller, and Superinten-
dent of Lamps.   It was then *ten minutes* past 12 o'clock.

It thus appears that bidders were notified by public advertisement to file their proposals with the Superintendent of Lamps by 12 o'clock, noon, June 1st, and that at *six* minutes past the hour thus designated, the Mayor and Comptroller, in the absence of the Superintendent opened the proposal filed by the Brush Company with the Mayor, it being the only proposal before them, and undertook to award the contract for electric lighting; and when the Superintendent entered the room at ten minutes past 12 o'clock, with a proposal filed at his office within the time required by the ordinance, they refused to open and consider said proposal. And this, too, under an ordinance which had carefully provided that *the Mayor and the Comptroller and Superintendent should open all proposals within the time designated, and should award the contract to the lowest responsible bidder.* These conditions were, as we have said, *conditions precedent,* the compliance with which was absolutely necessary to the exercise of the power to make the contract. They had no power to make a contract without advertising for proposals, nor had they any power to make a contract without opening all the proposals filed within the time designated, nor had they any power to award the contract to any one, other than the lowest responsible bidder. Now, it can hardly be said that these conditions have been fairly complied with in awarding this contract. The fact that bidders had been notified by public advertisement to file their proposals with the Superintendent of Lamps up to the hour of 12 o'clock, noon, was known to the Mayor and Comptroller; and this notice, we must presume, was published with their consent and by their authority. And, if so, they knew it must take some time—how many minutes or seconds we are unable to say—for that officer to go from his office to the office of the Mayor; and if he was not there

precisely at 12 o'clock, or six minutes past twelve it was their duty to have sent some one to inquire as to the cause of his detention, or to have waited at least a reasonable time, and, above all, to have ascertained whether any proposals had been filed with him under the advertisement. We cannot agree to any such narrow and strained construction of the ordinance as this; nor can we permit the spirit and meaning of its provisions, intended to guard and protect the public interest, to be defeated by such indiscreet haste on the part of officials, charged with the duty of making a contract of so much importance, and involving the expenditure of so much money.

But then, it was argued, there is no ground for the interference of a Court of equity, because the bill nowhere alleges that the proposal which the defendants refused to open and consider was a lower bid than the one filed by the Brush Company, and it does not, therefore appear that the complainants suffered any damage by the refusal to consider this bid. This assumes that the defendants had the power to make a contract for electric lighting, without reference to the terms and conditions of the ordinance under which the power is exercised, and that upon a bill filed to restrain the execution of such a contract, the complainants must allege and prove that a contract on better and more favorable terms might have been made, if the requirements of the ordinance had been complied with. We cannot agree to this. They had no power to make a contract except in the mode and manner prescribed by law; and we agree with the Court below that the complainants "have a right to require that the money they have contributed for the public benefit, shall be spent only for the purposes, and in the manner authorized by law, and that every security designed to protect its proper expenditure shall be faith-

fully observed. This right is a vital one to them, and they are required to allege no other injury than that it is about to be violated. They will be injured, if the violation is permitted, by the act of violation alone." If all the proposals filed in conformity with the requirements of the ordinance had been opened and considered, and the defendants had then awarded the contract, in such a case we agree that, to entitle the complainants to the interference of a Court of equity, it would be necessary to allege that they had not awarded the contract to the lowest responsible bidder.

Other objections were relied on in argument, in regard to which we have but a word to say. It was argued that the proposal which the defendants refused to open ought to have been filed as an exhibit with the bill. Now, it is true, where the right to an injunction is based upon a written instrument in the possession of the complainant, or to which he has ready access, the instrument itself, or a copy, ought to be filed with the bill, in order that the Court may see whether the complainant is entitled to the relief prayed. But here the right of the complainants to an injunction is not founded on the written contents of the proposal filed with the Superintendent of Lamps, but upon the averment, that a proposal was filed with him in conformity with the requirements of the ordinance, and that this proposal the defendants refused to open and consider. This averment is not denied in the answer, and must therefore be taken as true. And, besides, this proposal was not made by the complainants but by a stranger; and they had no right to demand either the proposal itself, or a copy. We shall not stop to consider whether this bill is filed in good faith, nor whether the rejected proposal was filed by a company authorized by its charter to do electric lighting. These are matters in no manner responsive to the bill, and must be established by proof

at  the  final  hearing,  and  cannot  be  relied  on  by  the
defendants  to  defeat  the  preliminary  injunction.

*Order affirmed, and*
*cause remanded.*

(Decided 18th March, 1890.)