84 A.2d 157 (1951)
HADDOCK
v.
BOARD OF PUBLIC EDUCATION IN WILMINGTON et al.
Civil Action No. 270.
Court of Chancery of Delaware, New Castle.
October 29, 1951.
Alexander L. Nichols and William S. Megonigal, Jr., of the firm of Morris, Steel, Nichols & Arsht, Wilmington, for plaintiff.
August F. Walz, City Sol., Wilmington, for defendant Board of Public Education in Wilmington.
John M. Bader, Wilmington, for defendant J. A. Bader & Co., Inc.
*158 BRAMHALL, Vice Chancellor.
Plaintiff is a property owner and taxpayer of the City of Wilmington and also president of the W. D. Haddock Construction Company. Defendant Board of Public Education in Wilmington is a statutory corporation created under the laws of this state and charged with the administration of the Wilmington Public School System. Defendant J. A. Bader *159 & Co., Inc. is a general contractor licensed and doing business in this state.
On June 21, 1951, the defendant Board of Public Education in Wilmington (hereinafter referred to as the "Board") advertised for sealed bids for the construction of a school, known as No. 13 Elementary School, to be erected at Gilpin and Grant Avenues in the City of Wilmington.
In the instruction to bidders furnished by the Board attention of proposed bidders was called to Volume 38, Chapter 171, Laws of Delaware, entitled "An Act Requiring Contractors on all Public Building Projects to Name Their Sub-Contractors", in the following language: "The Contractor for each separate branch of the work must fill out in complete detail where required on the proposal form the names of all sub-contractors who are to perform work and labor or furnish materials or both, and also the names of the person or persons from whom materials are to be purchased for the performance of the work of the various branches, all in accordance with the Laws of Delaware, Volume 38, Chapter 171, an Act requiring Contractors on Public Building Projects to name their sub-contractors, approved April 20, 1933."
Following the above quotation this act was recited verbatim. Forms of proposals for bids were furnished by the Board to prospective bidders, in which the proposed bidder was expected, in each instance, to name the specific sub-contractor who would perform the particular work therein referred to.
Pursuant to said advertisement the Board received proposals from J. A. Bader & Co., Inc. (hereinafter called "Bader"), W. D. Haddock Construction Company (hereinafter known as "Haddock"), John E. Healey & Sons, Inc., and Ernest DiSabatino & Sons, Inc. The Bader base bid was nearly $15,000 less than the Haddock's, the next lowest bidder. Subsequent to the opening of the bids, in an endeavor to supply the names of certain sub-contractors either omitted or set forth in the alternative in the original bid, Bader filed a supplement to its bid in the form of a letter addressed to the architects acting for the Board, submitting certain information relative to sub-contractors and material men. At approximately the same time Haddock filed with the Board written objection to the Bader proposal, stating that in three instances Bader did not properly submit the names of sub-contractors and in twenty-four instances failed to give the names and addresses of the material men as required by the proposal.
The Board held a hearing relative to the objections filed by Haddock to the Bader bid, at which time both Bader and Haddock were present. At that hearing, presumably after considerable discussion, the Board decided to refer the matter to the City Solicitor for an opinion as to the validity of the Bader bid. The Board subsequently awarded the contract to Bader as the lowest responsible bidder. Shortly thereafter plaintiff filed in this court a complaint, alleging that the action of the Board under the circumstances of this case in awarding the contract to Bader was ultra vires, void and of no effect and that the Board therefore had no authority to award the contract to Bader. Plaintiff's prayers were for a declaratory judgment to this effect, with the further request that both Bader and the Board be permanently enjoined from entering into or executing any contract or agreement on the basis of the proposal submitted to the Board by Bader. Thereafter, motions for summary judgment and affidavits were filed by counsel on behalf of both parties.
Plaintiff contends (1) that Section 3647 of the Revised Code of Delaware 1935, as amended, forbids multiple listing of sub-contractors and also requires the naming of materialmen, particularly in all cases where special materials are required; (2) that the specific purpose of the legislature in passing the statute above referred to was to require general contractors to name the sub-contractor who would furnish labor or material for each particular part of the work; and, (3) that the acceptance by the Board from Bader of the letter purporting to furnish certain omissions in Bader's bid was improper and that Bader can receive no benefit therefrom.
*160 Defendant contends (1) that Section 3647 of the Revised Code of Delaware, 1935, as amended, does not prohibit the listing of more than one contractor in the alternative; (2) that an alternative listing of sub-contractors, where the choice of sub-contractors rests with the Board, is not a violation of the act; (3) that this court will not enjoin the action of the Board at the suit of the plaintiff taxpayer unless it is demonstrated, directly or indirectly, that the action sought to be enjoined would entail a monetary loss to the taxpayer's class; and, (4) that a violation of the statute, if there was any violation, was technical only and not substantial.
To determine the contention of the parties the court must consider: (1) Was Bader's bid in substantial compliance with the statute and the proposal of the Board? (2) What are the rights of a taxpayer, on behalf of himself and others of his class in attempting to enjoin a public body from entering into a contract for the erection of a public project?
Was the bid of Bader in substantial compliance with the statute and the proposals of the Board?
Section 3647 of the Revised Code of Delaware, 1935, as amended, provides, as follows:
"Any contract exceeding Five Thousand Dollars in amount for the construction, alteration or repair of any public building of the State of Delaware, or any political subdivision thereof, shall be awarded to those bidders only whose bids are accompanied by a statement containing the names and addresses of the sub-contractors whose services such bidder intends to use in performing the work.
"It shall be unlawful for any such bidder to list himself, itself or themselves, as the case may be, in any such accompanying statement as the sub-contractor of any part of such public work unless such bidder, in addition to being licensed as general contractor of the State, shall also be recognized in the trade and licensed by the State as a sub-contractor in and for any such part or parts of such public work so listed in such accompanying statement. Further, it shall be unlawful for the State, or any officer, agency, department or political subdivision thereof, to accept any bid or award any contract for any such public work unto any such bidder, as the general contractor, in the event any such bidder shall have listed himself, itself or themselves, as the case may be, as the sub-contractor of any specialty work required to complete such public work, such as plumbing, electrical, wiring, heating, roofing, insulating, weather stripping, masonry, brick laying, plastering, or any other specialty work, unless it shall have been established to the satisfaction of the officer, agency, department or political subdivision of the State charged with the letting of such public work (a) that such bidder has customarily performed such specialty work by artisans regularly employed by such bidder in his, its or their organization; (b) that such bidder is duly licensed by the State to engage therein; and (c) that such bidder is recognized in the trade as a bona-fide sub-contractor in such specialty work.
"After the contract for any such public work has been let unto any such bidder, thereafter it shall be unlawful for said bidder to substitute another sub-contractor for any sub-contractor whose name is set forth in said bidder's accompanying statement, aforesaid, without the written consent and permission so to do having theretofore been given by the officer, agency, department or political subdivision of the State under whose jurisdiction such public work is being performed. No such express consent and permission so to do shall be given unless it shall be established to the satisfaction of such officer, agency, department or political subdivision, as the case may be, in good faith, that the sub-contractor in question whose name is listed in the bidder's accompanying statement has defaulted in their performance of the part or parts of the work covered by his, its or their sub-contract, or is no longer engaged in such business.
"All such contracts shall contain a provision for withholding from, or requiring the payment by, the general contractor of such penalties as shall be provided for *161 therein for the failure to utilize any or all sub-contractors set forth in the bidder's accompanying statement, aforesaid, in the performance of the public work contemplated by such contract. Any sums so withheld from or paid by the contractor for any such failure or failures may be remitted or refunded, in whole or in part, by the officer, agency, department or political sub-division of the State, as the case may be, charged with the letting of such public work, but only in the event it is established to the satisfaction of such officer, agency, department or political sub-division, in good faith, that the sub-contractor in question has defaulted or is no longer engaged in such business, as aforesaid."
There is nothing in the wording of the act which would make it difficult to ascertain from a reading of the act itself the meaning thereof. The purpose of the legislature is expressed, largely, in words of common usage. In the absence of anything in the statute to the contrary, words of common usage should be given their usual, ordinary and natural meaning. Statutory Construction by Crawford, paragraph 186, page 316; Rash v. Allen, 1 Boyce 444, 76 A. 370. In so interpreting this statute the purpose or intention of the legislature would seem to be clear. The entire act relates solely to the furnishing of the name of the sub-contractor for each particular portion of the work upon which sub-contractors will be employed. Therefore, if it were not the intention of the legislature to compel a contractor in every case to furnish the name of the sub-contractor upon whom he will rely for the particular work involved there would be no purpose in the legislature passing the act. The fact that the legislature further provided that no contract should be awarded where such information was not furnished in the bid indicates that the legislature intended the provisions of the act in this respect to be mandatory and not merely directory. The further fact that the legislature considered it necessary to pass an amendment to the act, in which it was provided that no sub-contractor should be substituted for another contractor except with the written permission of the agency or department of the state under whose jurisdiction such public work was being performed and that no such consent should be given unless such officer or agency was satisfied that the original sub-contractor had defaulted or was no longer engaged in such business is not without significance.
However, if it should be assumed that there is ambiguity in the language of the law, which would then permit the use of outside evidence to determine the purpose of the act, the intention of the legislature becomes abundantly clear. According to the affidavits filed by the plaintiff, to which there is no denial, the very purpose of the passage of the act was to eliminate an unhealthy condition then existing between contractors and sub-contractors in the building industry.
Without going into detail relative to these affidavits,  because the court is convinced that the language of the act is clear,  it is sufficient to say that they are to the effect that the act was passed for the purpose of compelling the disclosure of the names of sub-contractors, preventing the naming of two or more sub-contractors for any particular work and also preventing the naming by contractors of themselves as sub-contractors. Certainly, therefore, if the meaning of the act should be considered to be ambiguous, the defendant would not be helped by a showing of the purpose and intention of the legislature in its passage.
It is the contention of counsel for defendants that the omissions in Bader's bid were merely technical irregularities and that Bader's bid was therefore in substantial compliance with the proposal of the Board. The court cannot agree with this construction of the Bader proposal in the light of the special requirements of the statute and the specific provision therein, particularly in view of the provision that no bidder whose bid does not comply with the conditions set forth in the act may be awarded the contract. It is hard to conceive that the legislature intended that such omissions would be construed as merely technical or mere irregularities *162 when it provided such a stringent penalty in the event of such omissions.
The statute makes the provision relative to the naming of sub-contractors a condition precedent to the awarding of the bid. Such a statute is mandatory and never merely directory. Eastern Shore Public Service Co. v. Town of Seaford, 21 Del.Ch. 214, 187 A. 115; Page v. King, 285 Pa. 153, 131 A. 707.
In the case of Page v. King, supra, the act in question required the contract to be awarded to the lowest bidder under specifications containing definite, essential elements for competitive bidding. In holding that under such circumstances the legislature fixed its own standards and that the provisions of the act relative to such specifications were mandatory, the court, 131 A. at page 708, said: "Where an act requires a contract to be awarded to the lowest bidder, under specifications containing with definiteness the essential elements for competitive bidding, the Legislature fixes its own standard for doing the work and furnishing the materials; such an act is mandatory and must be complied with."
It is therefore determined that the bid of Bader does not comply with the requirements of the statute and that the Board was without authority to award the contract to it. This being the case, Bader would, of course, have no right to submit, nor would the Board have the right to accept, the supplemental information contained in Bader's letter to the architects.
What are the rights of a taxpayer, on behalf of himself and others of his class in attempting to enjoin a public body from entering into a contract for the erection of a public project?
This question presents a more serious problem. Bader's base bid was nearly $15,000 less than Haddock's, the next lowest bidder. Statutes dealing with bidding on public work are to be construed in the light of their primary purpose  to protect the public against the wasting of its money. Fetters v. Mayor and Council of Wilmington, Del.Ch., 72 A.2d 626. As far as is shown in this case neither the plaintiff nor any of the taxpaying class would sustain a definite loss if the contract should be awarded to Bader. Ordinarily, for a taxpayer to have any standing in this court he must at least show some evidence of a loss to his class in general. See cases cited under 52 Am.Jur., Section 3, page 3; 18 McQuillin on Municipal Corporations (3d Ed.) 52.13; High on Injunctions (4th Ed.) Sec. 9.
In the present case, however, the court is faced with the violation of a statute, in which the sole purpose seems to be the requirement that a general contractor bidding on a public project name the sub-contractors who will be used by him in the performance of the work in the event that the contract should be awarded to him. The statute specifically states that no contract shall be awarded based upon a bid which does not comply with the statute. In addition, since the Board has seen fit to award the contract to Bader, there would apparently be no one else sufficiently interested who would be in a position to question the validity of the award to Bader. Therefore, unless a taxpayer's suit will lie, the rights of taxpayers and the public in general would be afforded no protection. This situation therefore strongly argues in favor of the plaintiff's right to maintain this suit. Baier v. City of Saint Albans, 128 W.Va. 630, 39 S.E.2d 145; Bancroft v. Building Commissioner, 257 Mass. 82, 153 N.E. 319.
While it is true that the doctrine of the right of an individual taxpayer to enjoin an unlawful expenditure of public funds is supported by a settled rule of equity applicable to private corporations, arguing that the inhabitants embraced within the limits of the district are in a substantial sense cestui que trustent of the public corporation, just as the stockholders are the cestui que trustent of a private corporation, and, for similar reasons, a taxpayer may institute a suit to prevent a wrongful act, the court must also consider the necessity for prompt action to prevent irremediable public injury. The taxpayer in such case should be permitted his suit because he is so directly interested in the funds of the public corporation. It would therefore seem that the failure of Bader to comply with the strict provisions of *163 the statute, which would make a contract entered into by reason thereof unlawful, of itself, should be sufficient to show damage or interest on the part of the taxpayer to maintain this action. Ruark v. International Union, 157 Md. 576, 146 A. 797; Mayor, etc., of the City of Baltimore v. Keyser, 72 Md. 106, 19 A. 706; Bancroft v. Building Commissioner, supra; Brumby v. Board of Lights & Waterworks, 147 Ga. 592, 95 S.E. 7; 18 McQuillin on Municipal Corporations (3d Ed.) 52.20; Harris v. City of Philadelphia, 299 Pa. 473, 149 A. 722; Dirks v. Collin, 37 Wash. 620, 79 P. 1112.
In the Harris case an award was made by the City of Philadelphia based upon a pre-qualification plan. Plaintiff claimed that the ordinance with reference thereto was illegal. Defendant contended that even though the ordinance might be defective, plaintiff could not take advantage of it as a taxpayer since there was no averment or proof that any of the rejected bidders would have bid less. In holding that this objection would not prevent the action by the taxpayer, the court, quoting Audenried, J., in Croasdill v. City of Philadelphia, 18 Pa.Dist.R. 719, 721, said: "Every taxpayer has a right to demand that the requirement of law with respect to the methods of letting municipal contracts shall be complied with in the case of every contract, apart from the question of the immediate or direct loss that the failure to comply therewith may involve in any specific case."
In the Santa Rosa case (Santa Rosa Lighting Co. v. Woodward, 119 Cal. 30, 50 P. 1025) the statute provided that before a city should contract for lighting its streets the council should advertise for bids, all contracts should be let to the lowest bidder, the contract should embody the specifications, no contract should be made for a period longer than one year and should go into effect within six months. Upon the institution of mandamus proceedings to compel the city to advertise, the lower court found that since the cost of lights had not been increased,  therefore not increasing the burden of the taxpayer,  the taxpayer had no standing to bring his suit and dismissed the proceedings. Upon appeal the appellate court in reversing the lower court, said, 50 P. at page 1031: "It should be presumed that where the law enjoins a duty upon a municipal body, and specifically points out the mode of its performance, a violation of that duty, and disregard of * * * its performance, will work injury."
In the Dirks case the lower court held that the abolishment of certain records unlawfully kept would cost more money than the expense of maintaining them and, since the taxpayers had sustained no loss, dismissed the action. The appellate court, however, reversed the action of the lower court, saying [37 Wash. 620, 79 P. 1114]: "It will not do to say to a public officer that, because much money is saved by spending a little unlawfully, therefore the public is not injured. Injury to the taxpayers is conclusively presumed from the unlawful expenditure of * * * money."
In the case of City of Baltimore v. Keyser, supra, relied upon by the plaintiff in his brief and commented upon by defendant, an ordinance by the city required certain city officers to advertise for proposals for lighting streets and buildings, to open the proposals at 12 o'clock and award the contract to the lowest responsible bidder. The advertisement required that bids be filed with the superintendent. A bid was filed in the office of the mayor and at 6 minutes after 12 o'clock the mayor and comptroller, in the absence of the superintendent, opened said bid and awarded the contract. Four minutes later the superintendent appeared with a bid filed in his office before 12 o'clock, but the others refused to consider it. A bill was filed to restrain the officers from entering into a contract in compliance with the award. Objection was made to the issuance of a restraining order on the ground that the bill nowhere alleged that the proposal which the defendants refused to open and consider was a lower bid than the one on which the contract was awarded. In affirming the order of the lower court granting the restraining order, the appellate court said, 72 Md. at page 708, 19 A. at page 708: "But then, it was argued, there is no ground for the interference *164 of a court of equity, because the bill nowhere alleges that the proposal which the defendants refused to open and consider was a lower bid than the one filed by the Brush Company, and it does not, therefore, appear that the complainants suffered any damage by the refusal to consider this bid. This assumes that the defendants had the power to make a contract for electric lighting, without reference to the terms and conditions of the ordinance under which the power is exercised, and that, upon a bill filed to restrain the execution of such a contract, the complainants must allege and prove that a contract on better and more favorable terms might have been made if the requirements of the ordinance had been complied with. We cannot agree to this. They had no power to make a contract except in the mode and manner prescribed by law; and we agree with the court below that the complainants have a right to require that the money they have contributed for the public benefit shall be spent only for the purposes, and in the manner, authorized by law, and that every security designed to protect its proper expenditure shall be faithfully observed. This right is a vital one to them, and they are required to allege no other injury than that it is about to be violated. They will be injured if the violation is permitted by the act of violation alone."
Counsel for defendants, in their brief in reply, attempted to distinguish the Keyser case from the present case on the ground that the action of the officers in the Keyser case was high-handed, discriminatory and showed a total disregard for the principles of competitive bidding, whereas, in the present case no such condition exists.
While it may be admitted that in the Keyser case the action of the officers was much more high-handed and much more arbitrary than in the present case, nevertheless, the reasons for declaring both awards illegal are the same. In both cases there was a failure to comply in a material way with the proposals. In the present case there was not only a violation of the proposals submitted by the Board but also a failure to comply with the requirements of a statute, in which the compliance therewith was made a condition precedent to the awarding of the bid.
See also Barnett v. Lincoln, 162 Wash. 613, 299 P. 392.
It is therefore determined that the Board of Public Education in Wilmington was without authority to award a contract for the construction of No. 13 Elementary School in the City of Wilmington on the basis of the proposal submitted by J. A. Bader & Co., Inc. and that both defendants will be permanently enjoined from entering into or executing any contract or agreement on the basis of said proposal.
An order will be entered on notice.