**KUHN CONSTRUCTION COMPANY, a corporation of the State of Delaware, Plaintiff,**

**v.**

**The STATE of Delaware and the Department of Natural Resources and Environmental Control of the State of Delaware, Division of Parks and Recreations, Defendants.**

Court of Chancery of Delaware, New Castle.

Submitted Oct. 1, 1976.

Decided Oct. 22, 1976.

Stanley William Balick, and Henry A. Heiman, Balick & Hearn, Wilmington, for plaintiff.

June D. Macartor, Deputy Atty. Gen., Wilmington, for defendants.

BROWN, Vice Chancellor.

Plaintiff Kuhn Construction Company, a Delaware corporation, sues in its capacity as a taxpayer to enjoin the defendant Department of Natural Resources and Environmental Control of the State of Delaware ("the Department") from implementing its announced award of a marine construction contract to J. E. Brenneman Company, a Pennsylvania corporation ("Brenneman"). This is a final decision based upon stipulated facts following the issuance of a temporary restraining order against the Department.

Pursuant to statutes governing the award of contracts for public improvements, the Department, by public advertisement, solicited and accepted bids for certain construction work to be done at Fort Delaware on Pea Patch Island. Bids were publicly opened on May 10, 1976. The bid of Brenneman was announced to be that of the low bidder and the bid of the plaintiff was next lowest. Plaintiff protested against the acceptance of the bid by the Department on the two-fold basis that despite the fact that the specifications called for both electrical and plumbing work, Brenneman failed to list a subcontractor for either and also lacked the necessary Delaware licenses to do the work itself.

In view of the protest, the Department purported to investigate the ability of

Brenneman to perform the project. This investigation consisted solely of a representative of the Department meeting with representatives of Brenneman. As a result the Department determined that Brenneman was well qualified by experience to perform the type of overall work required by the contract (a fact which plaintiff does not dispute) and that its intention was to hire and put on its payroll for that purpose journeyman electricians and plumbers who would have the necessary Delaware licenses and who would thereby perform the necessary electrical and plumbing work as employees of Brenneman when the time came for it. The Department thereupon notified Brenneman of its intention to award the contract to it as the qualifying low bidder. This suit followed shortly thereafter.

The statutory provisions which must be satisfied in order to support the award of the contract to Brenneman are contained as follows in 29 Del.C. § 6911:

"(a) Such contract shall be awarded only to a bidder whose bid is accompanied by a statement containing the names and addresses of the subcontractors whose services the bidder intends to use in performing the work. No bidder for such a contract shall list himself in any accompanying statement as the subcontractor of any part of the public building unless the bidder, in addition to being licensed as a general contractor of the State, shall also be recognized in the trade as a subcontractor in and for any such part or parts of such work so listed in such accompanying statement.

"(b) Neither the State nor any political subdivision thereof nor any of their respective agencies shall accept any bid for such a contract or award any such contract to any bidder, as the general contractor, if the bidder has listed himself as the subcontractor of any specialty work required to complete such public building, such as plumbing, electrical wiring, heating, roofing, insulating, weather stripping, masonry, bricklaying, plastering or any other specialty work, unless it has been established to the satisfaction of the awarding agency that the bidder has customarily performed such specialty work by artisans regularly employed by the bidder in his organization, that the bidder is duly licensed by the State to engage in such specialty work, if the State requires such licenses, and that the bidder is recognized in the trade as a bona fide subcontractor in such specialty work."

It is stipulated by the parties that the written bid of Brenneman failed to list any subcontractor for the electrical and plumbing work. Plaintiff suggests that this fact alone, i. e., the failure of Brenneman to list itself on the bid as the electrical and plumbing subcontractor, is sufficient to disqualify the bid for noncompliance with § 6911(a). Assuming for the purpose of argument, however, that the failure to list any subcontractor can be explained by Brenneman's post-bid statement that it intended to indicate thereby its intention to perform that specialty work itself, it seems that the matter can clearly be resolved under the provisions of § 6911(b).

The mandate of that subsection is unequivocal on its face. It provides that a State agency, such as the Department here, shall neither "accept any bid" nor "award any such contract" to one bidding as a general contractor who has listed himself as the subcontractor for any specialty work, specifically including "plumbing" and "electrical wiring," unless the agency is satisfied of three things. The three things are as follows:

(1) That the one bidding as a general contractor "has customarily performed such specialty work by artisans regularly employed . . . in his organization;"

(2) That the one bidding as a general contractor "is duly licensed by the State to

engage in such specialty work, if the State requires such licenses;" and

(3) That the one bidding as a general contractor but listing himself as subcontractor for specialty work "is recognized in the trade as a bona fide subcontractor in such specialty work."

█ Under the undisputed facts of this case it appears that Brenneman is a well-known contractor in the Delaware Valley area specializing in marine construction and pile foundations. In recent years it has also expanded into the heavy construction field. Electrical and plumbing work is incidental to its main field of endeavor, and is normally performed by employees on its payroll. However, it operates out of Pennsylvania and, at the time of bid openings, neither the corporation itself nor any regular employee within its organization was licensed to do electrical work by the State of Delaware * or licensed to do either electrical or plumbing work by New Castle County, the political subdivision within which the project site is located. Nor does it appear that Brenneman has any reputation or recognition in this State as a firm that is a bona fide subcontractor in the field of plumbing and electrical wiring. Indeed, as I understand it, Brenneman makes no claim as to such recognition as a subcontractor.

Thus, the low bid of Brenneman, as submitted, failed to meet the requirements of § 6911(b) insofar as Brenneman, as bidding general contractor, sought to perform the plumbing and electrical work itself.

█ The Department argues, however, that it has the discretion to investigate this situation and, if it is satisfied that Brenneman is qualified to perform the contract as general contractor and will only perform

the electrical and plumbing work when the time comes for it by persons regularly in its employ who by then will have the necessary Delaware licenses, then it may nonetheless award the contract to Brenneman so as to assure the taxpayers the advantage of its low bid. The Department bases this position in large part upon two unreported decisions of this Court in *Maintenance ꞏTechnicians Service, Inc. v. Conrad School District*, C.A. 3995 (February 13, 1973) and *Peter D. Furness Electric Co. v. The City of Wilmington*, C.A. 4843 (October 9, 1975).

The *Maintenance Technicians* case did hold that an agency, before rejecting a low bid, had duty to investigate the qualifications of the low bidder who proposed to act as his own subcontractor rather than to reject the bid on the advice of its architect, especially where the evidence established that the low bidder was well qualified by previous experience to perform the specialty work in question. The *Furness* case later relied in part on *Maintenance Techicians* to hold on facts almost similar to the present situation that the City of Wilmington, before rejecting a low bid on the grounds that the low bidder lacked the licenses to do certain specialty work itself, had a duty to investigate so as to ascertain whether or not the requirements of § 6911(b) had been satisfied. In *Furness* the low bidding general contractor, in response to specifications calling for the construction of a wharf, failed to list a subcontractor for the included plumbing and electrical work since it proposed to do that work itself. Despite the fact that it had no Delaware licenses either in its own right or through its employees to do this specialty work at the time of the bid opening, the City, after investigating and exacting a commitment that the low bidder would use

---

\* As a point of clarification, I am advised that the State does not issue electrical licenses to corporations, but only to individuals either in their own right or on behalf of their corporate entity or employer. Under any criteria, however, Brenneman was not Delaware licensed at the time of its bid.

no subcontractors but would perform the work only with its own employees who would have the necessary licenses at the time, determined to award the contract to the low bidder anyway. The decision in *Furness* approved this procedure, it being felt that the investigation required in *Maintenance Tehnicians* had been made and had satisfied the City that the specialty work would be performed by neither an unlisted subcontractor nor an unlicensed artisan employed by the low bidder.

Upon further reflection, however, I am of the opinion that although the result reached in *Furness* was not necessarily improper in view of the overall circumstances, the potential precedent it seems to establish, and which the Department seeks to rely upon here, is both unfortunate and unwarranted. Being the jurist responsible for the result in *Furness*, I deem that to the extent that it would purport to authorize a State agency to circumvent the clear import of § 6911(b), it should not be perpetuated.

As noted earlier, the statute forbids the State agency to award a contract to a low-bidding general contractor who proposes to do its own specialty work unless the agency is satisfied that the low bidder is duly licensed by the State to engage in such specialty work. Here Brenneman was not so licensed at the time it submitted its low bid and by satisfying the Department that it would obtain licensed personnel to perform the work later as they were needed, it merely fortified plaintiffs' objection that at the time the Department determined to award the contract Brenneman did not have the necessary licenses to engage in the plumbing and electrical specialty work in Delaware and thus could not meet the mandate of § 6911(b). If the statute is to have any force, a determination as to qualifications required by the statute must be made on the bid as submitted and prior to the award of the contract. The contract should not be awarded on the strength of a promise that the statutory conditions re-

sticting the very right to accept a bid will be satisfied subsequent to its acceptance. Compare *Haddock v. Board of Public Education In Wilmington*, 32 Del.Ch. 245, 84 A.2d 157 (1951).

The Department concedes that one evil which the statute is intended to avoid is that of bid shopping among subcontractors by a low bidder after it has received the award of a contract. A secondary purpose should be to give the State some indication prior to the award of the contract as to the identity of the persons or firms who will be doing the specialty work involved so that it will at least know they are qualified to the extent of being properly licensed. Compare 29 Del.C. § 6911(c). To allow a general contractor without the necessary licenses or licensed personnel to be awarded a contract and to thereafter hire individual craftsmen with the required licenses as needed to perform specialty work would emasculate the purpose of the statute and again give rise to an unhealthy relationship between contractors and subcontractors which the statute was designed to prevent.

The Department also contends that since the total cost of the electrical and plumbing work involved here is some $30,000 as compared against a total bid price of some $1.5 million, it is *de minimis* and thus a mere technicality which should not require the rejection of a low bid more than $60,000 below all others. However, 29 Del.C. § 6911 by its terms applies to public construction contracts in excess of $5,000. Thus the General Assembly has established what is *de minimis* for the purpose of a statute which, under appropriate conditions, allows a general contractor to act as its own subcontractor for certain specialty work.

Finally, the Department challenges the right or standing of the plaintiff to maintain this action as a taxpayer's suit. However, in an action such as this, brought to enforce a law binding on a pub-

lic authority, it seems that the propriety of maintaining it as a taxpayer's action has long since been settled. *Haddock v. Board of Public Education In Wilmington, supra; Light & Power Construction Co. v. Mc-Connell,* 40 Del.Ch. 281, 181 A.2d 86 (1962); *Lord v. City of Wilmington,* Del. Ch., 332 A.2d 414 (1975).

■ A permanent injunction will issue enjoining the Department from awarding, implementing or furthering the award of the contract to the low bidder, J. E. Brenneman Company, for the reasons set forth herein. To the extent that the complaint seeks an order directing the award of the contract to plaintiff as next lowest bidder, the relief is denied. The decision to go to another bid or to rebid the contract anew is one which is within the discretion of the Department. Counsel are directed to agree upon and submit a form of order within 10 days.