## Steppacher v. Bradley

*McNees, Wallace & Nurick*, for plaintiff.

*John B. Stevens, Jr.*, Deputy Attorney General, for defendant.

SOHN, J., May 5, 1959.—Plaintiff in this action avers that he was the low bidder following a bid proposal of the Pennsylvania Department of Property and Supplies, acting for and on behalf of the Pennsylvania State Police, for approximately 6,000 tires for use on State Police cars for the contract year beginning January 15, 1959, and ending January 14, 1960. The bids were opened on December 29, 1958, and thereafter plaintiff learned that the contract would not be awarded to him. He thereupon promptly instituted the present action in equity asking that the award of the contract to another bidder be enjoined. He also seeks a mandatory injunction ordering that the contract be awarded to him on the ground that he was the lowest responsible conforming bidder.

On January 23, 1959, plaintiff and his counsel presented themselves in Judge Neely's chambers, accompanied by John B. Stevens, Jr., Deputy Attorney General, representing all of defendants, and asked our court to grant his application for a preliminary injunction. This application was made in the presence of all the members of the Dauphin County Court. After some discussion defendants, by their counsel, agreed that the contract in question would not be awarded until the present action could be heard and decided, but that in the meantime State Police tires could be purchased on an emergency basis as required from time to time. The court, by Judge Neely, then granted a rule upon defendants to show cause why an injunction should not be issued. On February 11, 1959, an answer was filed and a hearing on the merits was held by the chancellor on April 29, 1959. We have considered the pleadings and all of the testimony taken before us and now make the following

*Finding of Fact*

The first ten findings of fact, which we now adopt, were stipulated for the record by counsel for both plaintiff and defendants in this case, as follows:

1. Plaintiff is an individual with his place of business at 407 Wyoming Avenue, Scranton, Lackawanna County.

2. Defendant Andrew M. Bradley is Secretary of Property and Supplies of the Commonwealth of Pennsylvania.

3. Defendant Frank McCartney is the State Police Commissioner of the Commonwealth of Pennsylvania.

4. Defendant Charles C. Smith is Auditor General of the Commonwealth of Pennsylvania.

5. Defendant Robert F. Kent is State Treasurer of the Commonwealth of Pennsylvania.

6. On or about December 5, 1958, the Commonwealth of Pennsylvania, by the Department of Prop-

erty and Supplies, mailed to interested persons, including plaintiff, a certain "Invitation-Bid Proposal", for bids for approximately 6,000 tires for the Pennsylvania State Police. A copy of said "Invitation-Bid Proposal" is attached to this complaint as exhibit "A" and is referred to more specifically in the following paragraph with respect to the bid submitted by plaintiff.

7. On or about December 29, 1958, plaintiff submitted his bid in response to said invitation. A copy of said bid and attached letter of explanation accompanying said bid are attached hereto, made a part hereof and marked exhibit "A".

8. On December 29, 1958, bids in response to said invitation were opened and the bid of plaintiff as set forth above and in the attached exhibit "A" was the lowest bid. The second low bid was that of Baskin Tire Sales, Inc., at a price of $1.08 per tire more than the bid of plaintiff.

9. The said Department of Property and Supplies either has, or unless restrained by this court, will award the contract or purchase order for said tires to the said Baskin Tire Sales, Inc.

10. The said "Invitation-Bid Proposal" states that to be acceptable the bid must specify "Goodrich Silvertown 125 or Goodyear Police Special *only.*"

11. Although the specifications in the proposal call for "Goodrich Silvertown 125 or Goodyear Police Special *only*", defendant in its answer as well as at the time of the trial through counsel admitted that this phrase just quoted must be read to include the phrase "or approved equal", after the item specified, in accordance with paragraph "P" of the conditions and instructions to bidders.

12. On the face of the "Invitation-Bid Proposal", the description of the articles to be furnished states merely "Tires, Police, High Speed."

13. On sheet 2 of the said "Invitation-Bid Proposal", a more definite description is set forth and is detailed as follows, to wit, that the tires to be furnished shall be: "Tires, High Speed, Passenger Car, Tubeless, Size 7.50 x 14. To be Goodrich Silvertown 125 or Goodyear Police Special *only*."

"Tire must be guaranteed not to blow out or throw rubber at sustained speed of 120 M.P.H."

"The manufacturer's name, trade name and serial number must be moulded in each tire."

14. The tire which plaintiff proposed to furnish is known as the "Firestone Nylon 500 Tubeless", manufactured by the Firestone Tire & Rubber Co., Akron.

15. The tire proposed to be furnished by plaintiff was tested by the Test Division of the Firestone Tire & Rubber Co. with the object of determining whether it could be operated at a sustained speed of 120 m.p.h. without blowing out or throwing rubber, and that with inflation set at 28 pounds per square inch cold, the tire was operated at a sustained speed of 120 m.p.h. for 31 miles, and that inspection thereafter showed the tires to be in a satisfactory condition.

16. The tire proposed to be furnished by plaintiff has been in service in various States, including Missouri, the Ohio turnpike, Colorado, Texas, Virginia and other States.

17. No reports have come back to the Firestone Tire & Rubber Co. that any of the tires known as the "F-500" have ever proven to be unsatisfactory.

18. The term "Police Tire" is a trade name but does not have a regular classification in the tire industry.

19. The term "High Speed" which appears in the specifications has no recognized technical meaning in the tire industry.

20. The term "Sustained Speed" as appearing in the specifications has no recognized technical meaning in the tire industry.

21. The Firestone "500" tire proposed to be furnished by plaintiff is a tubeless, passenger tire of excellent quality and the size proposed to be furnished is 7.50 x 14, as was required.

22. The term "Police Tire" is not a recognized technical term, nor are there any recognized criteria or specifications in the tire industry for a tire for "police" use.

23. Some manufacturers advertise a so-called "police tire", but this designation has no technical basis known to the tire industry.

24. The tire proposed to be furnished by plaintiff is a 4-ply cord tire.

25. The tires specified by brand name are not in themselves comparable to each other for competitive bidding purposes for the reason that the "Goodrich 125" is a 6-ply tire and the so-called "Goodyear Police Special" is a 4-ply tire.

26. Under paragraph "P" appears the following language on the second sheet of the bid specifications, to wit: "Wherever in these proposal forms and specifications an article or material is defined by using a trade name and/or the name and catalog number of the manufacturer or vendor, the term 'or approved equal' if not inserted therewith, shall be implied. It is to be understood that any reference to a particular manufacturer's product, either by trade name or by limited description, has been made solely for the purpose of more clearly indicating the minimum standard or quality desired. The term 'or approved equal' is defined as meaning any other make equal in material, workmanship and service, and as efficient and economical in operation. An article meeting these conditions may be accepted."

27. Plaintiff's bid was rejected before any tests had been made in connection with plaintiff's tires.

*Discussion*

The issue before us here is whether the specifications provide for a common standard under which bids may be lawfully received. The Administrative Code of April 9, 1929, P. L. 177, 71 PS §639, provides that contracts such as here involved must be awarded to the lowest responsible bidder. Judge Neely of this court in Schreck v. Woolworth, 61 Dauph. 83 (1950), quoting from Judge Richards' opinion in Bailey v. Gordon, 59 Dauph. 455, 460 (1948), says:

" 'The term "lowest bidder" implies a common standard under which all bids may be received. That common standard implies previously prepared specifications, freely accessible for all competitors; on these alone shall their bids be based.' "

In accordance with this "common standard" requirement, it must clearly follow that the "common standard" relied upon must appear in the specifications. No tests or standards of quality may be applied which do not appear in the specifications.

In Shireman v. Scott, 53 Dauph. 19 (1942), this court says:

"In this case a common standard was set up in the specifications, on the basis of which the various bidders prepared their bid samples. However, the act of testing the bid samples against a highway model which substantially differed from the common standard obviously destroyed the standard. The destruction of the common standard, in turn, precluded competitive bidding. Competitive bidding is an inseparable element in all public contracts. Without it a contract cannot lawfully be let: Dolan vs. Schoen, 261 Pa. 11 (1918) ; Page vs. King, [285 Pa. 153] supra; Harris vs. Philadelphia, et al., 299 Pa. 473 (1930)."

The Commonwealth's testimony in this case shows that it now seeks to impose or imply standards which are not set forth in the specifications. It gave evidence

as to certain tests made of plaintiff's tire, but those tests were not the basis for the rejection of plaintiff's bid for they had not been made at the time of the rejection of plaintiff's proposal.

Nor has the Commonwealth prepared specifications calling for "alternative bids", therein classifying tires of different types or specifications and asking for different bids upon such alternative proposals. What it has done is to specify one standard and that standard is an ambiguous one. What is meant in the specifications by the term "Sustained Speed"? We submit that such language is entirely open to speculation and that it is neither clear nor unequivocal. Likewise, the designation of the word "police" in describing a tire is almost meaningless for who knows what a "police" tire really is. The use of the term "Sustained Speed" does not say whether it is a sustained speed for a given number of miles or distance, or that it is an equal speed for a given period of time. Likewise, the issue is confused by the term "approved equal" appearing under paragraph "P" of the specifications. The question naturally arises, what is an "approved equal", and at the same time who is to furnish the approval? We likewise have a situation where the specifications call for what it later developed in the testimony is in one case a 6-ply tire and in the other case a 4-ply tire. On what common ground or common standard can a plaintiff submit a bid with any reasonable degree of certainty? Such specifications as were offered to the bidding public in this case are certainly not in harmony with the principle of open, fair and uniform competitive bidding. As argued by plaintiff, they foster an atmosphere of doubt and secrecy which can only inure ultimately to the public detriment. At one place the specifications call for certain brands *only*, and yet these brands themselves do not set forth a "common standard".

As stated in Pearlman v. Pittsburgh, 304 Pa. 24 (1931):

"The term 'lowest bidder' necessarily implies that there must be a common standard open to all: Page v. King et al., 285 Pa. 153; Mazet v. Pittsburgh, 137 Pa. 548. . . ."

To sum up, we feel that the specifications submitted to the bidders in this case are so confusing, indefinite and ambiguous that we have no other recourse but to hold that they furnish no common standard whatsoever upon which bidders could submit legal bids and therefore that relief should be granted to plaintiff.

### Conclusions of Law

1. The specifications prepared by the Commonwealth provide no common standard under which all bids could be legally received.

2. Plaintiff in this case has no adequate remedy at law.

3. A permanent injunction must be granted enjoining and restraining defendants from approving or awarding a contract under the specifications prepared in this case to any bidder whatsoever.

4. Defendants shall not hereafter accept delivery of any tires awarded under the terms of any contract pursuant to the invitation or bid proposal submitted in this case.

5. That a permanent injunction must be granted enjoining and restraining defendants from approving any bids submitted in response to said "Invitation-Bid Proposal" or from awarding any contract or purchase order pursuant thereto.

6. That said "Invitation-Bid Proposal" is illegal and void.

7. That the bill of complaint must be sustained at the cost of defendants.

The prothonotary is directed to enter the following and to give prompt notice thereof to the parties.

500

*Decree Nisi*

And now, May 5, 1959, it is ordered, adjudged and decreed as follows:

1. That the bill of complaint is sustained.

2. That a permanent injunction issue restraining Andrew M. Bradley, Secretary of Property and Supplies of the Commonwealth of Pennsylvania, Col. Frank McCartney, State Police Commissioner of the Commonwealth of Pennsylvania, Charles C. Smith, Auditor General of the Commonwealth of Pennsylvania, and Robert F. Kent, State Treasurer of the Commonwealth of Pennsylvania, their successors, agents, servants, representatives and employes, or either or any of them, from approving any bid submitted in response to said "Invitation-Bid Proposal", or from awarding any contract or purchase order pursuant thereto.

3. That defendants pay the costs of this suit.