## Allied Paint Manufacturing Co., Inc., v. Bradley

*Robert C. Duffy*, and *Nolan F. Ziegler*, of *Compton, Ziegler & Hepford*, for plaintiff.

*John B. Stevens, Jr.*, Deputy Attorney General, *Anne X. Alpern*, Attorney General, for defendants.

*Robert L. Rubendall*, of *Hull, Leiby & Metzger*, for intervening defendant.

NEELY, J., April 13, 1960.—Plaintiff, by its bill in equity, seeks to have defendants enjoined from executing a contract awarded for furnishing special white traffic zone paint in 11 highway districts in the Com-

monwealth of Pennsylvania, and to have the contract awarded to it on the basis of its low bid. Jaegle Paint & Varnish Company intervened as a defendant.

Plaintiff avers and contends that it submitted lump sum bids for each of the districts in accordance with the invitation bid proposal, whereas the intervening defendant, in submitting said lump sum bids, attached a condition that it was bidding for all or none of the districts. Plaintiff avers that it was low bidder in the four districts on which it bid, and that although the intervening defendant submitted a higher bid on these four districts, all 11 districts were awarded to the intervenor.

These averments are not controverted, but defendants aver that there were deviations from specifications in the plaintiff's bid, and even though there were also deviations in the intervening defendant's bid, the contract for all of the districts was awarded to the intervenor . . .

It is obvious here that the parties were not bidding on the same basis. The invitation bid proposal made no reference to a total bid on the 11 districts. When the intervening defendant added the provision "all or none" to its bid, it was, in effect, submitting a new proposal of which plaintiff, according to the testimony, knew nothing.

The contracts for this paint were let in accordance with the provisions of section 2409 of The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §639, which governs the method of awarding contracts by the Department of Property and Supplies and makes provision, inter alia, for advertising for bids, the receipt of proposals and the opening of bids. It is a basic requirement that bidders submitting proposals under this section of The Administrative Code do so on an equal basis. There must be uniformity in bidding, that is to say, bids must be in accordance with a common

standard. Such common standard is necessary in order that the Commonwealth may have the advantage of fair and just competition between bidders, thus eliminating as far as possible any question of favoritism. See 43 Am. Jur. §46, p. 789; Mazet v. City of Pittsburgh, 137 Pa. 548 (1890) ; Flinn v. Philadelphia, 258 Pa. 355 (1917) ; Page v. King, 285 Pa. 153 (1926) ; Guthrie v. Armstrong, 303 Pa. 11 (1931) ; Shireman v. Scott, 53 Dauph. 19 (1942).

In Bailey v. Gordon, 59 Dauph. 455, 460, 461 (1948), this court, Richards, P. J., said:

". . . 'The term "lowest bidder" implies a common standard under which all bids may be received. That common standard implies previously prepared specifications, freely accessible for all competitors; on these alone shall their bids be based . . .'

". . . 'Unless the bid responds to the proposal in all material respects it is not a bid at all, but a new proposition.' "

"The rule is fundamental that any award of public contracts must be in accordance with specifications, and there must be a common standard": Schreck v. Woolworth, 61 Dauph. 83, 93 (1950). The intent of provisions "regulating the awarding of public contracts, is to secure . . . the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms": Mazet v. City of Pittsburgh, supra, 561, 562.

It seems to us that, because of the lack of a common standard, there was no uniformity in the bidding and, for that reason, the award of the contract for the 11 districts to the intervening defendant was invalid. Much testimony was produced in the record concerning the failure of both plaintiff and the intervening defendant to meet certain specifications with respect to the component parts of their paint. In tests made at

the laboratories of the Department of Highways, plaintiff's product failed to meet the requirements of the viscosity (fluidity) test and the fatty acid test. On the other hand, the intervening defendant's paint failed the dry hard time test and the rosin test. Plaintiff's paint met all requirements in testing the finished product.

In this situation as to testing, the Secretary of Property and Supplies rejected plaintiff's product and accepted the intervening defendant's product. And at the hearing in this case there was much contention among all of these parties as to which of the deviations in testing were major or minor. It is not within our province, on the basis of these facts, to pass judgment on the exercise of discretion by the Secretary of Property and Supplies with respect to these tests. Although the Deputy Secretary of Highways, according to the testimony, stated that plaintiff's paint could be used, we feel that we would have no power to direct the Secretary of Highways to overlook deficiencies revealed in plaintiff's tests. We could not then direct that the contract be awarded to plaintiff. Basically, the real difficulty in this case is inherent in the basis upon which the contract in question was bid, namely, that there was a lack of uniformity in the bidding in that the parties were not bidding for the same thing. The award of the contract to the intervening defendant must be set aside for that reason.

The intervening defendant contends that plaintiff is estopped here from obtaining equitable relief because of the delay in asserting its rights. We cannot agree with that contention. The complaint was filed in this court on March 14, 1960, and before that date plaintiff had made request upon the court to fix a time for hearing its application for preliminary injunction. The testimony reveals that from time to time during the month of February plaintiff had been in contact with

both the Department of Property and Supplies and the Department of Highways concerning the status of its bid, and not until February 16th did it receive notice that it had not received the award in the districts in which it was low bidder.

The testimony reveals that the nature of the intervening defendant's bid, all or nothing, was discussed with officials in the two departments, and that the status of the case and plaintiff's objections had been brought to the attention of both the Department of Property and Supplies and the Department of Highways. The officials of the Commonwealth then, who are the defendants in this case, were aware that plaintiff was insisting on the right to have its low bid accepted and knew that this matter was in controversy. Under these circumstances, we do not think that plaintiff was guilty of undue delay in bringing this matter into court less than a month after its low bid had been rejected. Estoppel was not pleaded.

After the hearing before the chancellor, the intervening defendant has interposed an objection to the jurisdiction on the ground that plaintiff has not proceeded by a taxpayer's bill. In McIntosh Road Materials Co. v. Woolworth, 365 Pa. 190 (1950), relief was sought in substantially the same terms as in the instant case and was granted by the Supreme Court. The action did not there proceed as a taxpayer's bill, but rather on the basis of the alleged grievance of plaintiff because defendants had refused the contract awarded to it.

Furthermore, intervenor's objection here does not relate to jurisdiction of the subject matter, but only of the person, namely, the manner in which plaintiff's bill is brought. The well recognized rule is that an intervenor takes litigation as he finds it:

". . . [Procedural] Rule 2328 requires a petition to intervene 'setting forth the ground on which inter-

vention is sought.' Rule 2329 provides that the application may be refused by the court: (1) if not in subordination to and in recognition of the propriety of the action; . . .

"The general rule is that an intervenor must take the suit 'as he finds it': Northampton Trust Company, Trustee, v. Northampton Traction Co. et al., 270 Pa. 199, 205, . . . Cf. Franklin National Bank et al. v. Kennerly Coal & Coke Co., 300 Pa. 479, 483, . . .": Commonwealth ex rel. Chidsey v. Keystone Mutual Casualty Company, 366 Pa. 149, 153, 154 (1950).

The petition for intervention may have been rejected if the intervenor had asserted therein that it was contesting "the propriety of the action."

Defendants have not, in their pleadings, raised any question of jurisdiction of the person. Nor did anyone at the hearing make any objection to the propriety of plaintiff's bill. If objection had been made in limine, any defect could have been cured by an appropriate amendment of the party plaintiff. It is too late to make an objection as to jurisdiction of the person after hearing, and when the matter has been submitted for the chancellor's decision. . . .

### Decree Nisi

And now, April 13, 1960, it is ordered, adjudged and decreed that the contract award to Jaegle Paint & Varnish Company, intervening defendant herein, be and the same hereby is declared illegal, null and void, and defendants are enjoined and restrained from taking further action on the basis of that award, or in any way recognizing or giving effect thereto, or from paying out any public funds in connection therewith. The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this decree, a final decree will be entered.