Metropolitan Messenger Service, Plaintiff, *v.* Commonwealth of Pennsylvania, Helene Wohlgemuth, Secretary of the Department of Public Welfare, Bernard P. Bertolino, Administrator of the Department of Public Welfare at the Philadelphia County Board of Assistance, and Purolator Courier Corporation, Defendants.

Argued March 5, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard W. Berlinger*, with him, of counsel, *Malis, Tolson & Malis*, for plaintiff.

*Darius G. C. Moss*, Assistant Attorney General, with him *Marx S. Leopold*, Assistant Attorney General, and *Israel Packel*, Attorney General, for defendants Commonwealth and Commonwealth officials.

*Thomas M. Kittredge* and *Lawrence I. Washor*, for defendant corporation.

OPINION BY JUDGE WILKINSON, March 25, 1974:

In our original jurisdiction, plaintiff has filed a complaint in equity seeking to have this Court declare the bid of defendant, Purolator Courier Corporation, and the contract subsequently awarded thereon invalid; direct the bid of plaintiff be accepted and the contract awarded to plaintiff; order defendant, Purolator Courier Corporation, to account to plaintiff for loss of profits during the period Purolator Courier Corporation performed the contract; and grant the usual "all other relief."

Defendants, Helene Wohlgemuth, Secretary of Public Welfare, Bernard P. Bertolino, and the Department of Public Welfare, filed preliminary objections in the nature of a demurrer on the basis that the complaint,

together with a copy of defendant Purolator's bid (which was not attached to the complaint because plaintiff alleged it did not have a copy, but which was supplied by defendants and accepted by plaintiff), establishes that the contract was properly bid and properly awarded.

Defendant, Purolator Courier Corporation, filed preliminary objections raising the following questions: Demurrer on the basis that plaintiff, a disappointed bidder, does not have standing to ask for relief; equity does not have jurisdiction since money damages would be sufficient; and laches.

Since we must sustain the preliminary objections on the basis that the complaint does not state a cause of action, it is unnecessary to discuss or decide the other questions raised. Suffice it to say that on the question of standing, we refer to Judge MENCER's recent opinion in *Altemose v. The Pennsylvania Higher Education Facilities Authority,* 7 Pa. Commonwealth Ct. 596, 300 A. 2d 827 (1973). On the questions of equity jurisdiction and laches, we refer to the opinion of Judge HERMAN, then of the Common Pleas Court of Dauphin County sitting as the Commonwealth Court, now of the U.S. District Court for the Middle District of Pennsylvania, in *Service Supply Corp. v. Hornbeck,* 86 Dauph. 44 (1966).

The essential facts as pled in the complaint and shown by defendant Purolator's bid are that plaintiff, during the period of July 1, 1972, through June 30, 1973, had a contract with the Department of Public Welfare to provide a check delivery service within the City of Philadelphia. The contract was being performed to the satisfaction of the Department of Public Welfare. The Department of Public Welfare requested bids for the performance of "said services" for the con-

tract period July 1, 1973, through June 30, 1974. Plaintiff submitted a bid. The only other bid submitted was from the defendant, Purolator Courier Corporation.

The Department of Public Welfare, in addition to supplying instructions for bidding and specifications for the services to be provided, supplied a form on which the bids were to be submitted. The form specified the district offices to which deliveries were to be made and from how many banks pickups were to be made. This was described as follows:

"Vendor to supply all necessary equipment, and personnel to pick up material on a daily basis at approximately one-hundred and six (106) Banks in Philadelphia and deliver the material to approximately thirteen (13) District Offices of the Philadelphia County Board of Assistance.

"Services shall be provided as described herein. Price to be quoted on a per stop basis.

*"Description of Program:*

"On each work day there are two (2) items needed in the appropriate District Office from each of the Banks that relate to them. These are the Check Registers for that pay day and the Unsigned Vouchers for Checks Returned to Treasury Department at the close of business on the previous day. This material will be picked up at each Bank on a daily basis and delivered to the appropriate District Office by no later than 3:00 P.M. of the same day.

"The District Office (sic) of the Philadelphia County Board of Assistance are determined geographically. Attached is a map showing the breakdown of the City of Philadelphia by District Offices.

"The following is a list of the District Offices and the number of Banks in each.

"1. Ridge District
2925 North Broad St.

Approximately eight (8) Banks
Nine stops x $—— per stop x 250
days =                                    $————

... (There followed 12 more District Offices with appropriate lines indicating the number of Banks. In each instance the number of stops was indicated as one more than the number of banks.) ...

"Lump Sum Total Bid        $————"

Accompanying the above was a printed form containing what would appear to be uniform instructions for such bidding and containing, in all, 17 paragraphs, many of which had no application to this situation. Paragraph 16 stated: "16. If space on the opposite side of this sheet does not permit the listing of all items for which bids are sought, additional sheets may be attached which will then become a part of this proposal."

On plaintiff's bid form, it inserted $1.63 as the per stop price, appropriately completing the total for each paragraph, and concluded with a lump sum total bid of $48,492.50.

Defendant Purolator Courier Corporation "xxxx-ed out" the number of stops in each bid paragraph and reduced it by one, so that the stops equalled the number of banks at which it was indicated pickups would be made. It then inserted $1.62 in each instance, completed the total for each bid paragraph and concluded with a lump sum total bid of $42,930.00. Defendant Purolator accompanied this bid with the following explanation:

"In response to your request for a proposal, we are pleased to submit the attached bid for your consideration.

"In regard to this bid, we feel obliged to clarify and state our understanding on the following subjects:

*"Charges*

"Although we understand all requirements of this bid, our bid price is based on a charge per shipment and not per stop. In accordance with our tariff, the charge for a single shipment includes a pick-up and delivery. Your bid requests a price per stop which increases the price per district by one shipment.

"The price per shipment will be $1.62. A shipment will be from one bank to one district office. Therefore, in effect, we are reducing the charge per shipment. For instance, the Ridge District Office will receive daily shipments from 8 banks. The charges will be $1.62 times 8 shipments per day times 250 days for an annual charge of $3,240.00 for that district.

*"Operating Authority*

"In order to submit a more responsible bid, we are including a copy of our PUC Intrastate Operating Authority.

"Any carrier submitting a bid for this contract must have the appropriate operating authority in order to legally perform the service included in this proposal. We respectfully suggest that the Pennsylvania Department of Public Welfare require all bidders to submit a copy of their operating authority before this contract is awarded." Under the authority of paragraph 16 of the instructions to bidders quoted above, the Commonwealth was entitled to consider this part of the bid.

It is most significant to point out that all parties agree that both bids were submitted to produce the identical services for which bids were requested. Based on

the bids, all parties agree that each bidder, if awarded the contract, would render identical services. The record being silent on the matter, we must assume each bidder is equally responsible. The only material difference is that which goes to the heart of fair, competitive bidding in Commonwealth contracts—the cost to the Commonwealth. If the Commonwealth awards the contract to defendant, Purolator Courier Corporation, the Commonwealth will pay $42,930.00 for the services. If it awards the contract to plaintiff, for what plaintiff asserts are identical services, it will pay $48,492.50. To which bidder should Helene Wohlgemuth, as a responsible Secretary of Public Welfare, award the contract? To ask the question is to answer it.

Neither bidder had more information than the other. The difference in bidding lay in the methods used by the bidders to arrive at their bids. No case has been pointed out to us and our research has not revealed a case where a bid was thrown out or a contract rejected solely on the basis that the party, who admittedly was bidding to supply the same product or service, used a different procedure to compute his bid. The plaintiff relies on *Page v. King*, 285 Pa. 153, 131 A. 707 (1926), *Allied Paint Manufacturing Co., Inc. v. Bradley*, 21 Pa. D. & C. 2d 747 (1960), and *Steppacher v. Bradley*, 21 Pa. D. & C. 2d 492 (1959). In *Page* and in *Steppacher*, the cases turned on whether the parties were going to supply the same product or its equivalent, i.e., in one instance books, and in the other, tires. In *Allied Paint Manufacturing*, the problem involved supplying road marking paint in 11 highway districts. The invitation to bid called for individual lump sum bids for each district. The apparent low bidder in the overall lump sum for the 11 districts added to his bid "all or none," meaning all 11 districts or none. Allied Paint, who was low bidder in four districts, successfully enjoined the award of the contract for these districts to the other

bidder on the basis that the invitations to bid did not call for "all or none." Certainly these cases are not precedent for the instant case.

Plaintiff asserts that the instant practice was contrary to fairness in bidding in that defendant Purolator computed its bid on the basis of "pickups" rather than on the basis of "stops" as did plaintiff. Even if plaintiff had used the same formula as defendant Purolator used, i.e., computing the bid on the basis of the actual number of pickups, its computation at $1.63 per pickup, as opposed to defendant Purolator's computation at $1.62 per pickup, would result in a lump sum total bid still in excess of the lump sum total bid of defendant Purolator.

It seems appropriate to conclude with Judge HERMAN's comment in *Service Supply Corp., supra,* at 46: "If, except as a taxpayer in a class action, a disappointed bidder, especially one who is not the lowest responsible bidder, has any rights at all (see R. S. Noonan, Inc. v. York School Dist., 400 Pa. 391 (1960)), he must present a very strong case to move the chancellor to enjoin the performance of a contract already entered into by the public authorities by an award on the bid and the issuance of a purchase order (as in this case to the lowest responsible bidder) prior to the institution of the equity suit."

Accordingly, we enter the following

## ORDER

Now, March 25, 1974, the preliminary objection in the nature of a demurrer is sustained and plaintiff's complaint in equity is dismissed.