633 A.2d 1271

Robert I. KIMMEL and William Hornung

v.

LOWER PAXTON TOWNSHIP, H. Michael Liptak, James L. Snyder, Richard H. Koch, Dutch Lentz, Donald Alfano, West Hanover Township, Donald L. Steinmeier, Martha K. Wolfgang, Paulette P. Konevitch, Robert R. Jones, and Neil R. Shatto, Jr., and Waste Management of PA, Camp Hill, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1993.

Decided Nov. 5, 1993.

476

478

Frank Michael D'Amore, for appellants.

Daniel J. Flaherty, for appellees.

Before DOYLE and SMITH, JJ., and KELTON, Senior Judge.

SMITH, Judge.

Lower Paxton Township, West Hanover Township, members of the townships' Boards of Supervisors, and Waste Management of Central Pennsylvania, a division of Waste Management of Pennsylvania, Inc., (Waste Management) (collectively Appellants) appeal from the August 31, 1993 final order of the Dauphin County Court of Common Pleas denying Appellants' post-trial motions and confirming the trial court's July 27, 1993 decree nisi permanently enjoining the townships from executing a five-year waste hauling contract entered into with Waste Management. The broad question raised for this Court's review is whether the trial court erred in ruling that the townships improperly rejected a disappointed bidder's public contract bid for failure to comply with bidding require-

ments set forth by the townships. For the following reasons, the trial court's order is reversed.

## I.

In March 1993, the townships agreed to jointly seek bids for a waste hauling and recycling contract for a five-year period to commence July 2, 1993. Prior to a finalized drafting of the invitation to bid, the townships held two pre-bid conferences with potential bidders to discuss the requirements for bids. The finalized invitation to bid was officially advertised in March 1993 and sent to interested bidders. Among the requirements of the invitation to bid was a provision that all bids be submitted by 4:00 p.m. on April 19, 1993. Representatives of both townships were to open the bids that evening to initially determine the amounts of each bid.

As of the deadline, the townships received eight bids for the contract. Upon bid opening, the townships determined that the three lowest bidders were, in succession, Wayne–Pike Sanitation Company (Wayne–Pike), York Waste Disposal, Inc. (York Waste), and Waste Management. Following the reading of the bids, the townships, through the efforts of the staff attorney for Lower Paxton Township, began to review the bids in detail to ascertain if the bidders had complied with mandatory requirements of the invitation to bid. Review of the Wayne–Pike bid revealed several defects which led to rejection of that bid and no subsequent action by Wayne–Pike. The York Waste bid was $8,605,740 for the five-year term and Waste Management's was $9,110,244.

Upon review of the York Waste bid, it was determined that York Waste failed to comply with the mandatory requirements of Section 3.1 of the invitation to bid, which required the bidder to furnish a letter from a recycling center certifying the center's capability to accept and market all recyclables over the full term of the contract. York Waste's bid provided only that the designated recycling facility had the capability to accept and market recyclables from the townships and did not certify that it could do so for the full term of the contract.

Further, staff counsel for Lower Paxton Township determined that York Waste's bid was missing the asset page from its financial statement and instead contained a blank page.[1]

Following the townships' opening and review of the bids, the vice president for York Waste became aware of the missing assets page and informed staff counsel that he would fax the missing information for consideration. Staff counsel responded that this information could not be considered since the bids had already been opened. York Waste nevertheless faxed the page in question. Upon review of Waste Management's bid, it was determined that the bid was responsive in all respects, and this determination has not been challenged in the present action.

On May 12, 1993, staff counsel sent his findings to the Board of Supervisors for both townships detailing the proposed amounts of the bids, along with counsel's conclusions regarding rejection of the Wayne–Pike and York Waste bids and recommendation for acceptance of the Waste Management bid. The Lower Paxton Township Board of Supervisors ultimately voted three to one to award the contract to Waste Management. The Board of Supervisors of West Hanover Township similarly decided, by a vote of three to one, to approve awarding the contract to Waste Management. The townships thereafter notified Waste Management that it had been awarded the contract.

On May 19, 1993, Robert I. Kimmel filed an action in equity with the trial court along with a motion for a preliminary injunction, and William Hornung was permitted to intervene without opposition on June 2, 1993 (Kimmel and Hornung, collectively Appellees). Following a June 2, 1993 hearing, the trial court issued a preliminary injunction against the townships enjoining execution of the contract with Waste Management. On June 22, 1993, the trial court entered an order

---

1. Staff counsel also noted other defects in the York Waste bid, including an incomplete equipment statement, obliterations on its route map, and a failure to affix a corporate seal. However, counsel concluded that it was not necessary to address these other defects because of the significance of the missing assets page and recycling certification defects.

authorizing Lower Paxton Township to extend its existing contract with Waste Management until September 30, 1993. In the interests of expediting the proceedings, the parties agreed to waive discovery and further pleading practice so that they could move promptly to a final hearing on the merits. On July 27, 1993, the trial court issued a decree nisi permanently enjoining the townships from executing the waste hauling contract with Waste Management, and further directing the townships to rebid the contract. Waste Management and the townships filed post-trial motions, which the trial court denied on August 31, 1993, and Appellants appealed to this Court which granted expedited consideration of the appeal.

## II.

On appeal from an order granting permanent injunctive relief, the standard of review is whether the trial court, in entering the final decree, abused its discretion or committed an error of law; the test is not whether there are any reasonable grounds for the action of the court below, as is the case in the review of preliminary injunctive relief. *Sparkes v. Wright*, 377 Pa.Superior Ct. 374, 547 A.2d 415 (1988). In reviewing the townships' actions, the trial court was limited to a determination of whether there was a manifest abuse of discretion or a purely arbitrary execution of the agency's duties or functions, *American Totalisator Co. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980); and the court could grant the extraordinary relief of permanent injunction only where the rights of the plaintiff were clear and free from doubt and the harm which the plaintiff sought to be remedied is great and irreparable. *Mann–Hoff v. Boyer*, 413 Pa.Superior Ct. 1, 604 A.2d 703, *appeal denied*, 531 Pa. 655, 613 A.2d 560 (1992). Courts will not review the action of governmental bodies or administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action, or abuse of power. *Karp v. Redevelopment Authority of the City of Philadelphia*, 129 Pa.Commonwealth Ct. 619, 566 A.2d 649 (1989), *appeals denied*, 527 Pa. 619, 620, 590 A.2d 760 (1990).

 Appellants first argue that the trial court erred in granting a permanent injunction because the supervisors were compelled by law to reject York Waste's bid as nonresponsive, and that the supervisors properly refused to accept York Waste's attempt to cure its bidding defects after the bids were open. Pursuant to Section 802(a) of The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65802(a), townships possess the power to make, authorize, and ratify expenditures for lawful purposes provided that all contracts or purchases in excess of ten thousand dollars "shall not be made except with and from the lowest responsible bidder."[2] In making determinations regarding the lowest responsible bidder, a municipality must necessarily examine each bid to determine its responsiveness to the requirements contained in the invitation to bid. It is well settled that the specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid.[3] *City of Philadelphia v. Canteen Co., Division of TW Services, Inc.,* 135 Pa.Commonwealth Ct. 575, 581 A.2d 1009 (1990); *Nielson v. Womer,* 46 Pa.Commonwealth Ct. 283, 406 A.2d 1169 (1979). Violation of bid instructions constitutes legally disqualifying error and a public agent may reject a bid for such error. *Canteen Co.*

 The trial court held that the townships' stated reasons for rejecting York's bid were "extremely technical," and that the townships have discretion to determine only whether a bidder is responsible and may only reject a bid for "material discrepancies." In reaching this conclusion, the trial court

**2.** An obvious purpose of the competitive bidding process is to also guard against favoritism, extravagance, fraud and corruption in the awarding of municipal contracts. *Conduit & Foundation Corp. v. City of Philadelphia,* 41 Pa.Commonwealth Ct. 641, 401 A.2d 376 (1979).

**3.** Section 1.5 of the invitation to bid required each bidder to furnish with the bid and in the same sealed envelope a full and complete sworn financial statement showing the bidders' assets and liabilities as of the end of 1992. Section 1.18 of the invitation to bid further provides that "[b]ids or proposals which contain erasures, alterations, conditional bids, omissions or irregularities of any kind may be rejected by the Townships at their option as not complying with the bidding documents."

erroneously relied upon *Kratz v. City of Allentown*, 304 Pa. 51, 155 A. 116 (1931), and *Pearlman v. City of Pittsburgh*, 304 Pa. 24, 155 A. 118 (1931), for the proposition that a municipality's discretion ends once it is determined which of the bidders are responsible. *Kratz* and *Pearlman*, however, are inapposite in at least two respects. First, neither case presented an issue of whether a bid failed to comply with bidding requirements. Rather, in each case the respective municipalities awarded contracts to the next lowest bidder because of purported concerns over the ability of the bidders to perform the contracts. Second, in each case the respective municipalities imposed conditions on the bidders that had the effect of stifling competition. *Kratz* and *Pearlman* are thus not controlling in the matter sub judice.[4]

The trial court also erroneously relied upon *Metropolitan Messenger Service v. Commonwealth*, 12 Pa.Commonwealth Ct. 609, 317 A.2d 346 (1974). In that case, Metropolitan Messenger, which was the second-lowest bidder, sought to have a contract award to Purolator Courier Corporation declared invalid. The invitation to bid required companies to submit a lump sum total bid and a calculation of the underlying per-stop price for check delivery services. Purolator complied with the bidding requirements by submitting the mandatory financial information, and submitted the lowest bid, despite Metropolitan's allegation that Purolator's method of computing the bid failed to comply with the bid requirements. In sustaining Purolator's preliminary objections, this Court held that the critical issue is not the form of the calculation, but that the required information was in the bid. Since Purolator's bid provided the requisite cost data, and since

---

**4.** This Court similarly rejects Appellees' contention, relying upon *Kratz*, that a low bid for a public contract cannot be rejected unless the municipality has made an actual investigation into the bidder's financial capacity and has, if necessary, afforded the bidder opportunity to provide evidence or information to aid in a determination of responsibility. Besides not being a case in which the bid failed to comply with bidding requirements, *Kratz* held that such an investigation was necessary where the city declined to award the contract to the lowest bidder because of unfounded and unsupported concerns over the quality of materials and the difficulty of performance of the contract. This is clearly not the present situation.

Purolator was the clear low bidder, this Court dismissed Metropolitan's complaint.

■ Despite Appellees' assertions to the contrary, *Metropolitan Messenger* in no way requires that municipalities waive technical variations from bid specifications, and indeed no support can be found for the trial court's or Appellees' distinction between technical and material defects. In *Metropolitan Messenger*, the parties' bids complied with the bid requirements and the agency appropriately awarded the contract to the lowest bidder, a situation not present here. Moreover, *Metropolitan Messenger* neither addresses nor condones post-bid opening submissions.

■ The township supervisors also properly refused to accept York Waste's attempt to cure its bidding defects after the bids were opened. The law is clear that a defective bid cannot be remedied once the bids have been opened. *Canteen Co.; Nielson.* There is no dispute that York Waste faxed the missing assets page to the townships after the bids were opened. Therefore, the township supervisors were without authority to consider the faxed information as being part of the original bid package. In *Nielson*, this Court held that memos supplied by a contractor after bids were opened could not be considered in an attempt to cure a deficiency in the bid proposal.

■ A further error was the trial court's determination that the townships had discretion to waive York Waste's "technical" bid deficiencies and should have exercised that discretion.[5] Appellants assert that the defects in York Waste's bid were "material," but in the alternative, even if the defects had been merely technical, the supervisors were with-

---

5. Section 1.19 of the invitation to bid states that the townships may waive technical defects if, in their judgment, the best interests of the townships shall so require. Even were this Court to validate the trial court's distinctions, its decision nonetheless cannot be upheld. The term "technical" implies something that is immaterial, not affecting substantial rights, or without substance. Black's Law Dictionary, 4th Ed. (1968). Neither the failure to comply with mandatory requirements regarding financial data nor to provide a full-term recycling certification can be considered "technical" defects in York Waste's bid.

out authority to waive the defects. In *Karp*, this Court held that "determining whether the requirements contained in the bid invitation were met is not a discretionary matter. These requirements are mandatory and the administrative body cannot decide in its discretion whether the bidder's effort at meeting the requirement was sufficient." *Id.*, 129 Pa.Commonwealth Ct. at 623–24, 566 A.2d at 652. Further, even were the trial court correct in holding that townships had discretion to waive the bid deficiencies, it erred in holding that the townships abused their discretion. In the absence of evidence of fraud, collusion, or arbitrary action, whether a municipality was wise in its rejection of a bid is not within the court's province to determine. *Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970).

 York Waste's bid also failed to comply with the bid requirements regarding recycling certification. The invitation to bid required all bidders to supply a letter certifying a recycling center's capability to accept and market recyclables from the townships over the full term of the contract. In its bid, York Waste's recycling letter failed to certify its access to a recycling center capable of accepting and marketing such waste and failed to specify that it could do so for the full term of the contract. The trial court excused this lack of compliance based, in part, on its finding that staff counsel had independent knowledge that York Waste owned its own recycling facility and also knew that York Waste's bid package was for the full five-year term of the contract. In so holding, the trial court clearly disregarded the mandate that bids must strictly follow bidding requirements. *See Nielson.*[6] Such personal knowledge is irrelevant in determining whether the bid strictly complies with the bidding requirements. Furthermore, a review of counsel's testimony reveals that it is unclear

---

6. In *Canteen Co.*, the invitation to bid directed that bids "offer to pay a guaranteed annual fee or 20% of the gross revenue derived from the concession [five-year vending machine concession at the Philadelphia International Airport] whichever sum shall be greater." The appellant's bid was rejected as invalid because it included language excepting the bidder from the guaranteed fee in the event of sales restrictions due to strike, act of God or war or riot.

whether he possessed this information at the time the bids were opened.

## III.

In the alternative, Appellees contend that the conduct of H. Michael Liptak, chairman of the Board of Supervisors of Lower Paxton Township, and Richard N. Koch, a member of that board, provides an additional and independent basis for this Court to affirm the trial court's opinion. The trial court found that Liptak was the owner and CEO of Highway Equipment Supply Company (HESCO), a company in the business of selling heavy construction equipment; at the time of the bidding process at issue, HESCO sold and/or leased equipment to Waste Management; and during board meetings, Liptak did not inform the other supervisors of his business relationship with Waste Management. Liptak however did not vote when the Board of Supervisors voted to award the contract to Waste Management. The court further found that Koch was employed as an engineer for Gannett Fleming, a consulting firm doing business with Waste Management.

Appellees argue that Liptak's and Koch's conduct was in violation of Section 802(f) of the Code, 53 P.S. § 65802(f), and that their being subject to civil and criminal penalties provides a basis for invalidating the award of the contract to Waste Management. Section 802(f) provides only that any township official who has direct or indirect interest in a township contract must so inform the other supervisors and refrain from voting on the expenditures. In the event of any violation, the remedies include damages, ouster from office, and fines, all of which are directed at the individual involved, not at the underlying contract. In addition, Appellees cite no authority for the contention that violation of Section 802(f) is grounds for invalidation of the contract.

The trial court properly found no evidence of collusion or ulterior motive on the part of either Liptak or Koch in awarding the contract to Waste Management. In rejecting arguments that a township's supervisors' acceptance of a

higher bid constituted collusion, fraud or bad faith, this Court in *Tri–County Motor Sales, Inc. v. Moore,* 52 Pa.Commonwealth Ct. 62, 415 A.2d 439 (1980), reiterated the policy consideration that judicial discretion may not be substituted for administrative discretion. Further, the Court acknowledged that a possible inference from facts not accepted by the trial court should likewise not be accepted by the appellate court unless clearly demonstrated by the record. The record here demonstrates that HESCO did business with most of the prospective bidders for the contract and moreover, that Appellees have failed to show that Koch's remote connection to Waste Management violated Section 802(f) in any manner.

Because the trial court committed an error of law, its decision must be reversed and the award of the contract to Waste Management reinstated.

## ORDER

AND NOW, this 5th day of November, 1993, the order of the Court of Common Pleas of Dauphin County is reversed and the award of the waste-hauling contract to Waste Management is reinstated.

KELTON, Senior Judge, dissenting.

Respectfully, I dissent. I do not believe that the Chancellor, the Honorable John C. Dowling, abused his discretion in enjoining the execution of a five-year waste hauling contract with Waste Management which would cost the Townships $504,000 more than the apparent low bid. Nor did he err in directing an immediate rebid of the proposed contract.

As found by the Chancellor, the invitation to bid provided that both townships may "waive technicalities, and accept any bid deemed to be in the best interest of the townships."

The invitation to bid also provided that all bids must contain a year-end financial statement. Through an apparent copying oversight, one page of York Waste Disposal's 23 page financial statement was submitted in blank. The missing page was supplied one day after bid opening. In addition, the bid invitation required "a letter from a recycling center certifying

the center's capability to accept and market the aforementioned recyclables over the full term of the contract." The letter as submitted stated as follows:

TO: To Whom It May Concern

FROM: York Waste Disposal, Inc.

DATE: April 17, 1993

SUBJECT: West Hanover/Lower Paxton Township

The above named recycling facility has the capability to accept and market all recyclables from Lower Paxton/West Hanover Township. Our facility is newly constructed (Nov. 1992) and contains the latest in recycling equipment technology.

Since 1988 we have provided recycling collection and marketing of recyclables for aluminum, bimetallic cans, glass, newsprint, cardboard and plastics.

Scott R. Wagner, President

Nancy Halliwell, Notary Public

I believe that our decision in *Metropolitan Messenger Service v. Commonwealth of Pennsylvania*, 12 Pa.Commonwealth Ct. 609, 317 A.2d 346 (1974) is sufficient authority for the Chancellor's order directing a rebid.

Here, York Waste Disposal was clearly the *lower* bidder of the two contestants, and the defects, if any, in its submitted bid, were each in reference to matters which affected the determination of whether York Waste was "responsible" within the meaning of the Second Class Township Code, 53 P.S. § 65802.[1]

Frequently, the determination by a municipality of a bidder's qualifications to complete a complex contract such as this involves detailed investigations made after bid opening date and may include checking past performance of other contracts, the adequacy of equipment, the bidder's financial stability, the

1. Act of May 17, 1957, P.L. 170 *as amended*, 53 P.S. § 65802(a): Each township shall have the power to make, to authorize, and to ratify, expenditures for lawful purposes from funds available therefor, by borrowing within legal limitation: Provided, That all contracts or purchases in excess of ten thousand dollars, except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder....

qualifications of subcontractors and many similar items of information not readily apparent on bid opening day. Here, the capability of a recycling center to accept and market all recyclables from the two townships must be finally determined not from a lawyer's office review of the wording of each bidder's certification letter, but upon a detailed field investigation by professional advisers competent to make a judgment on such matters.

The precise issue before this Court is *not* whether the bid should have been awarded to York Waste Disposal. In view of the Chancellor's order, that issue is moot. Instead, here we are asked to determine whether the Chancellor abused his discretion in ordering the two townships to start all over again, given the relatively minor discrepancies in the bid documents and the wide variation in the amount of the competing bids.

I do not believe that a misfiring copy machine or an ambiguous letter about disposal capacity should necessarily force one to conclude that the bidder failed to meet bid specifications or that it was not responsible.

Because of the significant $504,000 difference between the York Disposal bid and the Waste Management bid, I would affirm the trial court's order directing rebidding.