**Robert Gary MARCH, Appellant,**

v.

**DOWNINGTOWN AREA SCHOOL DISTRICT and John S. McManus, Inc.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided Dec. 5, 2000.

Before SMITH, Judge, FLAHERTY, Judge (P.), McCLOSKEY, Senior Judge.

SMITH, Judge.

AND NOW, this 7th day of May, 2001, upon consideration of the Application to Report Unreported Opinion filed by the Downingtown Area School District, this Court's opinion of December 5, 2000 shall be designated OPINION instead of MEMORANDUM OPINION and shall be reported.

Robert Gary March appeals from the order of the Court of Common Pleas of Chester County denying March's request for a permanent injunction to order the Downingtown Area School District (School District) to set aside bids and conduct another competitive bidding for a construction contract. March questions whether the trial court erred in determining that the School District properly awarded the contract to the second lowest bidder, John S. McManus, Inc. (McManus), even though McManus failed to comply with explicit bid instructions; whether the court erred in refusing to enjoin the award even though Ernest Bock & Sons, Inc. (Bock) was the apparent low bidder and the School District did not consider its right to waive technical defects in Bock's bid; and whether the court erred in failing to allow the testimony of March's expert witness.[1]

The School District advertised for bids for four prime contracts for construction of additions and alterations to the Downingtown East High School, including one for general construction and one for heating, ventilation and air conditioning (HVAC). Bids were opened on September 16, 1998 and Bock was the apparent low bidder on

Thomas M. Guinan, Huntingdon Valley, for appellant.

James C. Sargent, West Chester, for appellees.

---

1. March's fourth stated question, whether the trial court erred when it applied the strict compliance standard set forth in *Kimmel v. Lower Paxton Township*, 159 Pa.Cmwlth. 475, 633 A.2d 1271 (1993), to Bock's bid but refused to do the same to McManus' bid, is not argued separately but rather is incorporated in its first argument.

the general construction work. Daniel C. Youngman of O'Brien Kreitzberg, the firm hired to be the construction manager, then examined the bids closely. He determined that Bock's bid did not meet the requirements of the bid documents in that (1) a supplement to the contractor's qualification statement was not included; (2) Bock stated that there were no suits pending against it when in fact there were, and it failed to provide information relating to lawsuits or requests for arbitration that it had filed; and (3) Bock failed to affix the corporate seal to certain documents. Youngman also raised a concern regarding the bid of Worth & Company, Inc. (Worth) for the HVAC contract.

At a special meeting the school board voted to award the general construction contract to McManus. March filed a complaint in equity seeking to enjoin the School District from entering into the contract with McManus on the ground that McManus was not the "lowest responsible bidder" as required by Section 751 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7–751. A similar action was filed seeking to enjoin the award of the HVAC contract to Connectiv Services, Inc. rather than to Worth. The trial court denied March's petition for a preliminary injunction by order of October 30, 1998. The court issued orders on December 15 and December 30, 1998 preventing the deposition or hearing testimony of Edward E. Kirkbride as an expert witness for March as to practices and customs of school districts in this area and the han-

dling and consideration of bids. By agreement of the parties the court decided the matter upon the briefs of counsel.

■■■ The trial court concluded that *Kimmel v. Lower Paxton Township*, 159 Pa.Cmwlth. 475, 633 A.2d 1271 (1993), was controlling, and it issued an opinion and decree nisi on March 9, 1999 denying the petitions for permanent injunctive relief. March filed exceptions, and the court issued an order July 6, 1999 denying the exceptions and making the decree final.[2] This Court noted in *Kimmel* that a trial court's review of the local agency's action is limited to a determination of whether there was an abuse of discretion or purely arbitrary execution of the agency's duties or functions, citing *American Totalisator Co. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980). Further, courts will not review the discretionary acts of governmental bodies in the absence of bad faith, fraud, capricious action or abuse of power. *Karp v. Redevelopment Authority of the City of Philadelphia*, 129 Pa.Cmwlth. 619, 566 A.2d 649 (1989). It is now well settled that specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid. *City of Philadelphia v. Canteen Co., Division of TW Services, Inc.*, 135 Pa.Cmwlth. 575, 581 A.2d 1009 (1990).[3]

March first contends that the trial court erred in determining that the School District properly awarded the contract to McManus because of two apparent irregularities in McManus' bid: that it failed to properly bid three alternates and that in

---

2. This Court's review of the trial court's order involving permanent injunctive relief is limited to determining whether the trial court abused its discretion or committed an error of law. *Licensed Beverage Ass'n of Philadelphia v. Board of Education of School Dist. of Philadelphia*, 669 A.2d 447 (Pa.Cmwlth.1995).

3. The invitation to bid in *Kimmel* provided that the townships might waive technical defects if the best interests of the townships so required. The Court noted that the two defects at issue in that case involving the omission of a required recycling certification and an assets page could not be considered as "technical" defects.

the Contractor's Qualification Statement, § 3.2.3, McManus answered "No" to the question "Has your organization filed any lawsuit or requested arbitration with regard to construction contracts within the last five years?" March asserts that McManus had filed a complaint with the Department of General Services (DGS). March argues that if the School District rejected the bids of Bock and Worth for lack of strict compliance with bid specifications pursuant to *Kimmel*, then the same standard should be applied to McManus' failure to answer § 3.2.3 in full. He maintains that Youngman investigated the claims and lawsuits of Bock and recommended rejection of the bid but that he did not investigate McManus and could not inform the school board that McManus failed to set forth the DGS complaint and incorrectly bid three alternates.

■ The School District first responds that Youngman testified that the bid documents requested alternates to several specific preferred items so that if the base bids exceeded the estimate for the project the School District could substitute alternates to cut down on costs. On three items, instead of bidding a dollar amount as an "add" or "deduct," McManus responded "NO BID."[4] Youngman testified that the School District understood that McManus would not reduce its bid. He stated that alternates would be considered only if the base bids came in over the budget, which had been established at a public meeting earlier. Because the total of the lowest responsible bids was well under the estimate for the entire project, there was no need to consider alternates, and Young-

man therefore did not feel it was necessary to raise the subject with the board.

■ In regard to the § 3.2.3 question of whether McManus had filed any law suits or requested arbitration involving construction contracts, the School District argues that the "claim" that McManus filed was not a "law suit" or an "arbitration." It asserts that McManus was the general contractor on a project for DGS, that the "claim" was an informal request for additional funds because of delays that were not McManus' fault and that the matter was settled. Further it asserts that *Kimmel* holds that a rejection of a bid may not be disturbed absent evidence of fraud, collusion or arbitrary action. The Court notes that there is no question that McManus did not file a law suit or a request for arbitration.

March's second contention is that the trial court erred in refusing to order a rebid because the school board never considered its right to waive any technical defects in Bock's bid. He notes that requiring competitive bidding serves the purpose of inviting competition and guarding against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts. *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979). He notes further that the decision to reject a bid may be overturned for an abuse of discretion, and the plaintiff need not prove fraud or other collusive conduct. *Lutz Appellate Printers, Inc. v. Commonwealth, Department of Property and Supplies*, 485 Pa. 559, 403 A.2d 530 (1979). In *Lutz* the Supreme Court interpreted former Section 2410 of the Administrative Code of 1929,[5] providing for the award of

---

4. The Instructions to Bidders stated at § 4.1.5: "All requested Alternates shall be bid." If no change in the Base Bid is required, enter "No Change." Plaintiff's Ex. No. 1, p. 3.

5. Act of April 9, 1929, P.L. 177, *as amended, formerly* 71 P.S. § 640, repealed by Section 6(a) of the Act of May 15, 1998, P.L. 358.

public printing contracts to the "lowest responsible qualified bidder" and that the Department of Property "shall have the right to reject any and all bids...." The court concluded that the statute did not provide for unbridled discretion by the public agency but rather required the exercise of "sound discretion" according to standards fixed for the protection of the public. March maintains that the school board did not exercise sound discretion.

The School District notes that in *Kimmel* this Court held that in making determinations regarding the lowest responsible bidder, a public agency must examine each bid to determine its responsiveness to the invitation to bid. In the present case, the Instructions to Bidders provided in § 5.2.1: "The Owner shall have the right to reject any or all Bids ... or reject a Bid which is in any way incomplete or irregular." Plaintiff's Ex. 1, Instructions to Bidders, p. 4. The Supplementary Bidding Instructions at page 6 further provided:

5.2.2 Bids that are unsigned, improperly signed or sealed, conditional, illegible, contain arithmetical errors, erasures, alterations, or irregularities of any kind, will, at the discretion of the Owner, be declared unacceptable.

5.2.3 Bid Forms and enclosures which are not prepared in strict compliance with the Bidding will, at the discretion of the Owner, be declared unacceptable.

■ As pointed out by Youngman in his letter to the School Board's solicitor, Bock answered "No" to the question in § 3.2.2. of the Contractor's Qualification Statement asking whether there were any judgments, claims, arbitration proceedings or suits pending or outstanding against the organization or its officers. In fact, as Youngman knew, the Unionville Chadds Ford School District had filed an action against Bock for abandonment of a project in 1994, which matter had not been settled. Bock also failed to disclose the Unionville Chadds Ford School District project in its listing of major construction projects in progress or completed within the last five years pursuant to §§ 3.4 and 3.5 of the Contractor's Qualification Statement. Plaintiff's Ex. 3; Plaintiff's Ex. 10. When asked why this project was omitted from the extensive listing of major projects completed and in progress, Thomas E. Bock stated: "Probably because of the litigation. It is not our best reference, if you're asking me." N.T. at p. 197. This Court agrees that a bidder should inform the School District about litigation involving another school district, and the Court rejects March's suggestion that a bidder's deception in failing to provide such highly relevant information is a minor irregularity that should or could be waived. *Kimmel.*

■ As for the issue of the trial court's preclusion of expert testimony, a decision to admit or deny evidence, including expert testimony, is within the sound discretion of the trial court. *Chicchi v. Southeastern Pennsylvania Transportation Authority*, 727 A.2d 604 (Pa.Cmwlth.), *appeal denied*, 560 Pa. 750, 747 A.2d 371 (1999). The trial court noted in its order of December 15, 1998 that testimony as to what the School District should have done and whether its rejection of the lowest bids was improper would be more in the nature of argument on legal questions that were for the counsel to argue and for the court to decide. In the order of December 30, 1998, rejecting the offered testimony for the second time, the court noted that customs and usages do not override the plain language of a contract. *Smith v. Penbridge Assocs., Inc.*, 440 Pa.Super. 410, 655 A.2d 1015 (1995). This Court sees no abuse of discretion whatsoever in the trial court's decision not to permit the proffered

testimony and accordingly affirms the court.

### ORDER

AND NOW, this 5th day of December, 2000, the order of the Court of Common Pleas of Chester County is affirmed.